# State of Rhode Island and Providence Plantations
## SUPERIOR COURT

[x] PROVIDENCE/BRISTOL [ ] KENT [ ] WASHINGTON [ ] NEWPORT

CIVIL ACTION, FILE No. 08-3342

OUSMAN CHAM
Plaintiff

STATION OPERATORS, INC.
Defendant

***Summons***

AFS Prentice Hall

*To the above-named Defendant:*

The above-named Plaintiff has brought an action against you in said Superior Court in the county indicated above. You are hereby summoned and required to serve upon ........................ Plaintiff's attorney, whose address is ........................ an answer to the complaint which is herewith served upon you within 20 days after service of this summons upon you, exclusive of the day of service.

If you fail to do so, judgement by default will be taken against you for the relief demanded in the complaint. Your answer must also be filed with the court.

As provided in Rule 13(a) unless the relief demanded in the complaint is for damage arising out of your ownership, maintenance, operation or control of a motor vehicle, or unless otherwise provided in Rule 13(a), your answer must state as a counterclaim any related claim which you may have against the Plaintiff, or you will thereafter be barred from making such claim in any other action.

........................ CLERK

Dated: ........................

(Seal of the Superior Court)

A TRUE COPY ATTEST
RICHARD W. HOWE
CONSTABLE # 6062

S- 135 (REV. 10/00)

# State of Rhode Island and Providence Plantations

............................................,SC

## PROOF OF SERVICE

I hereby certify that on the ........................................ day of ................................................ I served a copy of this summons and a copy of the complaint received therewith upon .............................................................................................................................................................................................................................................
in the following manner:

By delivering a copy of the summons and complaint to him/her personally.

By leaving a copy of the summons and complaint at his/her dwelling house,....................................................................................................................................................... with a person of suitable age and discretion then residing therein. (Address)

By leaving a copy of the summons and complaint at his/her usual place of abode, ....................................................................................................................................................... with a person of suitable age and discretion then residing therein.

By delivering a copy of the summons and complaint to an agent authorized by appointment or by law to receive service of process, namely ..............................................................................................................................................

such agent being one designated by statute to receive service, further notice as the statute requires was given as follows:

.............................................................................................................................................
.............................................................................................................................................
.............................................................................................................................................

Sheriff's Fees

Travel ........................ $..........................

Service ...................... $..........................

$..........................

..............................................................
Deputy Sheriff

CIVIL ACTION

FILE NO. ..........................................

SUMMONS

SUPERIOR COURT

VS

ATTORNEY FOR PLAINTIFF

NOTE: Returnable to Plaintiff's Attorney forthwith after service. Proof of service to be filed within time during which the person served must respond.

CORPORATION SERVICE COMPANY

WAS / ALL
Transmittal Number: 5960419
Date Processed: 08/08/2008

# Notice of Service of Process

| | |
|---|---|
| **Primary Contact:** | Mr. S. J Balagia Jr.<br>Exxon Mobil Corporation<br>800 Bell Street<br>Room 1503<br>Houston, TX 77002 |
| **Copy of transmittal only provided to:** | Ms. Karen Cunningham |
| **Entity:** | Station Operators Inc.<br>Entity ID Number 0175892 |
| **Entity Served:** | Station Operators, Inc. |
| **Title of Action:** | Ousman Cham vs. Station Operators, Inc. |
| **Document(s) Type:** | Summons/Complaint |
| **Nature of Action:** | Discrimination |
| **Court:** | Providence Superior Court, Rhode Island |
| **Case Number:** | 08-3342 |
| **Jurisdiction Served:** | Rhode Island |
| **Date Served on CSC:** | 08/08/2008 |
| **Answer or Appearance Due:** | 20 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |
| **Plaintiff's Attorney:** | George E. Babcock<br>475-5985 |

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the documents and taking appropriate action.

**To avoid potential delay, please do not send your response to CSC**

*CSC is SAS70 Type II certified for its Litigation Management System.*

2711 Centerville Road Wilmington, DE 19808 (888) 690-2882 | sop@cscinfo.com

**STATE OF RHODE ISLAND** **SUPERIOR COURT**
**PROVIDENCE, SC**

**OUSMAN CHAM**

**VS.** **CA NO. 08-** 3342

**STATION OPERATORS, INC.**

## VERIFIED COMPLAINT

### The Parties and Their Status under RI Law

1. Ousman Cham (hereinafter "Cham") is a resident of the State of Rhode Island and a former employee of Stations Operators Inc., Smithfield, RI location, within the meaning of Rhode Island Fair Employment Practices Act pursuant to Rhode Island General Laws §28-5-24.1 and pursuant to the terms, conditions and policies contained in Title VII of the Civil Rights Act of 1964, as amended, and 42 USC 2000, et seq. and Rhode Island Civil Rights Act claim pursuant to Rhode Island General Laws §42-112-2

2. Station Operators, Inc., (hereinafter "Station"), is a Virginia Corporation, registered with the RI Secretary of State and authorized to do business in the State of Rhode Island using the fictitious name of ExxonMobil CORS., and it employed more that 4 persons at its location in Smithfield, RI and was, therefore, an employer within the meaning of Rhode Island Fair Employment Practices Act pursuant to Rhode Island General Laws §28-5-24.1 and pursuant to the terms, conditions and policies contained in Title VII of the Civil Rights Act of 1964, as amended, and 42 USC 2000, et seq. and Rhode Island Civil Rights Act claim pursuant to Rhode Island General Laws §42-112-2.

### Jurisdiction

3. This Court has jurisdiction over Cham's Rhode Island Fair Employment Practices Act pursuant to Rhode Island General Laws §28-5-24.1 and pursuant to the terms, conditions and policies contained in Title VII of the Civil Rights Act of 1964, as amended, and 42 USC 2000, et seq.

4. This Court has jurisdiction over Cham's Rhode Island Civil Rights Act claim pursuant to Rhode Island General Laws §42-112-2 and over his action related to the alleged violations of Title VII of the Civil Rights Act of 1964, as amended and 42 USC 2000, et. Seq.

5. Venue is proper since the unlawful employment practices took place in Providence County and since the Defendant operates a business in Providence County.

## Nature of Complaint

6. Cham brings this action against Station to obtain full and complete relief and to redress the unlawful employment practices described herein.

7. This action seeks attorney's fees and other litigation expenses and other equitable relief, including but not limited to, back pay as well as compensatory and punitive damages to remedy the unlawful discrimination in employment that Cham suffered on account of his race, religion and national origin, all in violation the Rhode Island Fair Employment Practices Act pursuant to Rhode Island General Laws §28-5-24.1, Rhode Island Civil Rights Act claim pursuant to Rhode Island General Laws §42-112-2 and Title VII of the Civil Rights Act of 1964, as amended, and 42 USC 2000, et seq.

## Exhaustion of Administrative Remedies

8. Cham filed a charge of discrimination and retaliation with the RI Commission For Human Rights on or about February 8, 2006 complaining of the acts of discrimination related to race, sex and national origin. This charge was contemporaneously filed with the EEOC.

9. On February 7, 2008, The RI Commission for Human Rights sent Cham a Notice of Right to Sue Letter.

10. None of the statutes referred to herein, particularly the RI Statutes, require the exhaustion of administrative remedies.

## Allegations Common to all Causes of Action

10. Cham was employed by Station as a cashier from May 13, 2003 until May 20, 2005.

11. Cham resigned on May 20, 2005 in response and due to discriminatory acts undertaken by employees and managers of Station.

12. On May 18, 2005, as a result of the aforesaid acts of discrimination, Cham was admitted to the hospital suffering from severe panic attacks.

13. On January 17, 2005, Cham was threatened with termination if he did not sign a warning relative to his missing work due to a car accident in New York, New York.

14. Cham, after being berated and humiliated in front of other employees, signed the warning which was later changed to a "write up" by the manger.

15. The manager forced Cham's initials on a cash control log without permission or knowledge and refused to release his employee file to him when requested.

16. On January 18, 2005, Cham furnished the manager with a medical leave slip due to injuries related to the January 17, 2008 accident and also requested paper work necessary to apply for medical leave.

17. The manager called his medical provider and inquired about my confidential medical files without permission or authorization.

18. The manager purposefully, based upon his stated disdain for him, his race, national origin and religion, interfered with my application for medical leave.

19. The manager never provided him with the requested paper work despite the fact that Cham called him and asked for it many times.

20. After the aforesaid numerous calls, he finally told Cham to call Human Services and that they would send Cham the forms.

21. Cham was informed by Human Resources that the manager had to request the forms or could provide the forms which should have been in the store.

22. Due to his purposeful actions and inactions, all of which was motivated by his disdain for Cham's race, national origin and religion, his health care insurance was wrongfully terminated on February 25, 2005 again causing him panic attacks and resulting in his not being able to be treated for certain eye and dental conditions.

23. Approximately one (1) month after his injury as, the manager called Cham and asked when he would return to work. When Cham informed him that he needed more time out and that he would provide him with a medical certificate, he yelled and screamed at Cham over the telephone stating that "I wanted to kill him."

24. Due to the manager's action and inaction, all of which was motivated by his disdain for Cham's race, national origin and religion, he never received the disability payments that he was due.

25. Prior to returning to work, the manager was informing other employees that Cham had been fired.

26. When Cham did return to work on March 16, 2005, the manager told me that him that he was not on the payroll but that he could work nonetheless. He was not on the schedule either and was being treated like an animal, all of which was motivated by his disdain for Cham's race, national origin and religion.

27. When Cham did return to work on March 16, 2005, the manager told him that he was only going make $8.00 per hour which was much less than he had been making.

28. On that same date Cham told him he was due a raise and vacation pay and he indicated that Cham's leave would result in his raise and vacation being delayed. This resulted in an argument.

29. Due to this argument, he cut Cham's hours from 40 per week to 32 per week.

30. Subsequent to this date, the manager took away the $50.00 food service manager fee that Cham had been receiving, claiming that the policy was no longer being used, but later gave the fee to another white employee while Cham did the work without compensation.

31. In May of 2005, Cham was informed by a health care provider that he did not have health care insurance, this despite the fact that it had been deducted from his check for nearly two months.

32. Cham inquired of the manager regarding this matter and he told him that he had not lost benefits, this despite the fact that he lost them as a direct result of his action and inaction, all of which was motivated by his disdain for Cham's race, national origin and religion.

33. Due to these actions by the manager, Cham contacted the Rhode Island Department of Labor and was instructed to contact the Defendant's Human Resource Department which he did. It put the blame on the manager and he was given a promise that a call would be placed to him and he would be instructed on how to remedy the situation.

34. Human Resources did call him and as a result, retaliated against him, but cutting his hours from 32 per week to 24 per week in an effort to harm him further and to force him out of my job, all of which was motivated by his disdain for Cham's race, national origin and religion.

35. Due to the fact that Cham had no medical insurance and his eye condition was getting worse, he could not work a shift and could not get anyone to cover for him.

36. As he was required to do, He called the manager at home and on his cell phone so he could arrange coverage, but he would not answer the telephone.

37. Finally, Cham contacted him at 10:30 in morning to tell him he could not work and he berated, belittled and insulted him on the telephone telling him that unless he was dying he had to be at work.

38. He never treated white employees this way in all the time that Cham worked at the Defendant's store.

39. When Cham's personal injury attorney wrote to the manager and asked for employment information for use in his insurance damage claim, he refused to provide the information.

40. Cham was the most senior employee at the store, but during his employment and despite his request for advancement, he hired a white woman with less experience than Cham as assistant manager.

41. While Cham worked, this new assistant manager and another employee would sit in the manager's office, watching him on the store camera, laughing and making fun of him for my race, national origin and religion. She would run to the manager and they would laugh about her stories about him in an attempt to humiliate him and make me quite.

42. This new assistant manager would refuse to allow Cham to go to the bathroom to torment him and try to get him to resign. She would make racial comments and negative comments about the fact that he was a Muslim.

43. A new pattern of harassment began when she became the assistant manager.

44. She would allow her boyfriend, a fired Mobile employee, to sit in the office with her and watch Cham on the video, all the while making jokes about his race and religion.

45. As a culmination of all of this abuse, on May 18, 2005, while at work, Cham began to suffer from chest pains and asked her to call a rescue, but she refused to do so.

46. Finally, on that date I called 911 and Cham was taken to Fatima Hospital and was again told that he did not have health insurance for mental health treatment.

47. He was released from the hospital two days later. He had not been scheduled for those days and was going to take my vacation, but was then told by the manager that he could not take the vacation, all to my detriment.

48. Due to the deplorable work conditions and the constant harassment, he resigned on May 20, 2005.

49. He was then told he could not have my vacation pay and was treated rudely, at the instruction of the manager, when he called to inquire about the status of his last paycheck.

50. On August 4, 2005, the manager used altered documents to justify the denial of his request for unemployment benefits.

51. On August 5, 2005, the Defendant forwarded $507.37, his last check, without a payroll statement.

52. His medical insurance was cancelled and he was never offered continued benefits as required by law.

**<u>First and Second Causes of Action</u>**

***RIGL §28-5-1, et seq. and §42-112-1 et seq. &***

***Title VII of the Civil Rights Act of 1964***

53. The Plaintiff repeats and realleges paragraphs 1 – 52 as if they were fully articulated herein.

54. The Defendant has intentionally discriminated against the Plaintiff on account of his race, national origin and religion, all in violation of The Plaintiff repeats and realleges paragraphs 1 – 52 as if they were fully articulated herein.

55. The Defendant has intentionally discriminated against the Plaintiff on account of his race, national origin and religion, all in violation of Rhode Island Fair Employment Practices Act pursuant to Rhode Island General Laws §28-5-24.1 and The Rhode Island Civil Rights Act §42-112-1 et seq and pursuant to the terms, conditions and policies contained in Title VII of the Civil Rights Act of 1964, as amended, and 42 USC 2000, et seq, and by denying him equal terms and conditions of employment, by failing to promote him, and creating a hostile work environment, all related to his face, national origin and religion.

56. As a direct and proximate cause of said acts, Plaintiff suffered and continues to suffer loss on income, loss of other employment benefits, and has suffered and continues to suffer emotional distress, humiliation, great expense, personal embarrassment and damage to his reputation, and a loss of enjoyment of life.

57. As a direct and proximate cause of said acts, Plaintiff suffered and continues to suffer loss on income, loss of other employment benefits, and has suffered and continues to suffer emotional distress, humiliation, great expense, personal embarrassment and damage to his reputation, and a loss of enjoyment of life.

**<u>Prayer for Relief</u>**

**WHEREFORE,** Plaintiff requests the Court to Enter Judgment as follows:

- Declare that the acts and practices complained of herein were in violation of The Rhode Island Fair Employment Practices Act pursuant to Rhode Island General Laws §28-5-24.1 and pursuant to the terms, conditions and policies contained in Title VII of the Civil Rights Act of 1964, as amended, and 42 USC 2000, et seq and The Rhode Island Civil Rights Act §42-112-1 et seq.

- Award Plaintiff lost wages, compensatory damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses.

- Award Plaintiff punitive damages for the Defendant's malicious, intentional and reckless violations of the Statutes herein plead and referred to herein.

- Award Plaintiff the cost of this action together with a reasonable attorney's fee and expert witness fees as provided by RIGL §§25-5-1 et seq. and 42-112-1, et seq.

- Any other relief this Court deems to be just and warranted.

**VERIFICATION**

I, Ousman Cham, hereby declare and verify under oath that the facts set forth herein are true and accurate to the best of my ability and memory.

Ousman Cham

Sworn to and subscribed before me this 6th day of May, 2008.

George E. Babcock, Esquire

Ousman Cham
By his attorney,

George E. Babcock, Esquire
1525 Old Louisquisett Pike
Bld. A. Suite 105
Lincoln, RI 02865
Bar Id 3747
475-5985

**Plaintiff demands a trial by jury.**