UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

OUSMAN CHAM,

    Plaintiff,

v.                                                C.A. No. 08-326 ML

STATION OPERATORS INC.,

    Defendant.

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendant's motion for judgment as a matter of law, or, in the alternative, for a new trial. On January 31, 2011, a jury found that Defendant had retaliated against Plaintiff for his having taken medical leave under the Family Medical Leave Act ("FMLA"). 29 U.S.C. § 2601. In its motion, Defendant argues that it is entitled to judgment as a matter of law because Plaintiff failed to provide sufficient evidence to support his FMLA retaliation claim. Alternatively, Defendant argues that a new trial is warranted because a miscarriage of justice would result if the jury verdict were permitted to stand. For the reasons set forth below, the Court denies Defendant's motion for judgment as a matter of law and grants Defendant's motion for a new trial.[1]

---

[1] The granting of Defendant's motion for a new trial renders moot several pending motions, including: Plaintiff's motion requesting entry of judgment, Docket No. 89; Plaintiff's motion to alter judgment, Docket No. 88; and Plaintiff's motion to strike response in opposition, Docket No. 102.

1

## I. Background

Plaintiff, Ousman Cham ("Cham"), is a follower of the Muslim religion and is of African heritage. He emigrated from Gambia to the United States in the year 2000. Beginning on May 13, 2003, Cham was employed by Defendant, Station Operators Inc. ("Station Operators"), as a sales associate at a gas station located in Smithfield, Rhode Island. After suffering an injury in a non-work-related automobile accident on January 17, 2005, Cham took medical leave beginning on January 18, 2005. Cham returned to work at Station Operators on March 15, 2005. In his lawsuit, Cham claimed discrimination in the workplace and retaliatory employment actions on account of his having taken medical leave. Cham ultimately left his employment with Station Operators on May 20, 2005, alleging that he was constructively discharged on that date.

Cham filed a charge of workplace discrimination with the Rhode Island Commission For Human Rights ("RICHR") and the EEOC on February 8, 2006. Cham received notice of his right to sue on May 6, 2008. Cham brought suit against his former employer alleging discrimination based on his race, national origin, color, gender, and religion[2] in violation of Title VII, 42 U.S.C. § 2000e, and the Rhode Island Fair Employment Practices Act, R.I. Gen. Laws § 28-5-1. Cham claimed a failure to promote,[3] disparate treatment, and hostile work environment.

---

[2] Cham dropped the gender and religion claims before the conclusion of trial. Trial Tr. vol. IV, 4:15-21, January 31, 2011, Docket No. 98.

[3] A hearing was held on January 18, 2011, to address the parties' motions in limine. There, Cham's counsel concurred with this Court in concluding that the promotion claims were time-barred and that dismissal was appropriate. Mot. Hr'g Tr. 7:17-8:22, Docket No. 94. The Court noted, however, that evidence of the failure to promote could be relevant to show discriminatory animus with regard to the timely discrimination claims. Id.

Cham further alleged that he was retaliated[4] against for having taken protected medical leave in violation of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, and the Rhode Island Parental and Family Medical Leave Act ("RIPFMLA"), R.I. Gen. Laws § 28-48-1.[5]

A jury trial commenced on January 24, 2011. There, Cham alleged that Station Operators discriminated against him because of his protected characteristics and retaliated against him for having taken protected medical leave. After Cham rested his case, Station Operators made a motion, as to all counts, for judgment as a matter of law. Trial Tr. vol. III, 34:4, January 26, 2011, Docket No. 97. In response, Cham's counsel conceded that there was no evidence to support the hostile work environment claim and agreed that it should be dismissed. Id. 40:16-22. As to the remaining claims, the Court took Station Operators' motion under advisement.

Before closing arguments, Cham made his own Rule 50 motion for judgment as a matter of law as to all counts. Fed. R. Civ. P. 50(a); Trial Tr. vol. IV, 2:17-19, January 31, 2011, Docket No. 98. The Court denied Cham's motion but ruled on Station Operators' Rule 50 motion and found that Cham had failed to make a prima facie showing of disparate treatment. Id. at 14:10-16:6. Consequently, the only claim left for the jury's consideration was the FMLA retaliation claim.

The jury returned a verdict for Cham and against Station Operators on the FMLA retaliation claim. Station Operators now renews its Rule 50 motion for judgment as a matter of

---

[4] At the January 18, 2011, motion hearing the Court dismissed Cham's substantive "interference" claims as time-barred under both the federal and state statutes. Mot. Hr'g Tr. 4:18-5:17.

[5] The elements of the FMLA and the RIPFMLA are "essentially the same" and the "disposition of the federal claims likewise disposes of the parallel state law claims." Hodgens v. General Dynamics Corp., 144 F.3d 151, 158 n.1 (1st Cir. 1998).

law, arguing that Cham failed to make out a prima facie case of FMLA retaliation and that, regardless, the retaliation claim was time-barred because Cham failed to prove willfulness. In the alternative, Station Operators has made a Rule 59 motion for a new trial on the basis that a miscarriage of justice would otherwise result because irrelevant evidence relating to the dismissed discrimination claims was prejudicial with regard to the sole claim that was submitted to the jury.

## II. Standard of Review

### A. Motion for Judgment as a Matter of Law

After trial, "the movant may file a renewed motion for judgment as a matter of law." Fed. R. Civ. P. 50(b). "A motion for judgment as a matter of law only may be granted when, after examining the evidence of record and drawing all reasonable inferences in favor of the nonmoving party, the record reveals no sufficient evidentiary basis for the verdict." Zimmerman v. Direct Fed. Credit Union, 262 F.3d 70, 75 (1st Cir. 2001). The Court "will evaluate neither the credibility of the witnesses nor the weight of the evidence." Malone v. Lockheed Martin Corp, 610 F.3d 16, 20 (1st Cir. 2010) (quoting Vazquez-Valentin v. Santiago-Diaz, 385 F.3d 23, 29 (1st Cir. 2004)). "Courts may only grant a judgment contravening a jury's determination when the evidence points so strongly and overwhelmingly in favor of the moving party that no reasonable jury could have returned a verdict adverse to that party." Malone, 610 F.3d at 20 (quoting Rivera Castillo v. Autokirey, Inc., 379 F.3d 4, 9 (1st Cir. 2004)).

B. Motion for a New Trial

A "court may, on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a). A district court may order a new trial "only if the verdict is against the law, against the weight of the credible evidence, or tantamount to a miscarriage of justice." Crowe v. Marchand, 506 F.3d 13, 19 (1st Cir. 2007) (quoting Casillas-Díaz v. Palau, 463 F.3d 77, 81 (1st Cir. 2006)). Judicial interference with a jury verdict is warranted only where the verdict "represents a blatant miscarriage of justice." Acevedo-Garcia v. Monroig, 351 F.3d 547, 566 (1st Cir. 2003) (quoting Sanchez v. Puerto Rico Oil Co., 37 F.3d 712, 717 (1st Cir. 1994)). "Trial judges have more leeway to grant new trials than to set aside verdicts based on insufficiency of the evidence under Rule 50." Valentin-Almeyda v. Municipality of Aguadilla, 447 F.3d 85, 104 (1st Cir. 2006).

### III. Discussion

A. Station Operators' Motion for Judgment as a Matter of Law

The parties agree that Cham took protected medical leave beginning January 18, 2005, and ending March 14, 2005. At trial, the parties wrangled over whether Station Operators retaliated against Cham for having taken that leave. In its motion for judgment as a matter of law, Station Operators argues that no reasonable jury could have rendered a verdict against it because Cham failed to make a prima facie showing of retaliation. Station Operators additionally argues that, aside from insufficient proof of FMLA retaliation, Cham's claim must fail because it

is time-barred.

### 1. Prima Facie Showing - Sufficiency of the Evidence

A plaintiff makes out a prima facie showing of FMLA retaliation when he demonstrates that "(1) he availed himself of a protected right under the FMLA; (2) he was adversely affected by an employment decision; (3) [and] there is a causal connection between the employee's protected activity and the employer's adverse employment action." Hodgens v. General Dynamics Corp., 144 F.3d 151, 161 (1st Cir. 1998). Station Operators contends that Cham failed to demonstrate that he suffered any adverse employment action and that, irrespective, there was no causal connection between any such employment action and the taking of FMLA leave.

#### i. Adverse Employment Action

Cham argued at trial that, upon his return from leave, his hours were reduced. Cham testified that prior to taking medical leave he was generally scheduled for 40 hours of work per week. He stated, however, that during the first week of his return from medical leave, he worked only 25.5 hours. Trial Tr. vol. I, 80:10-25, January 24, 2011, Docket No. 95; CORS Work Schedule, Pl.'s Ex. 22. The following week, the week ending March 23, 2005, Cham was scheduled for only 32 hours. Trial Tr. vol. I, 82:22-83:7. Records submitted into evidence indicate that Cham worked 33.5 hours for the week ending March 30, 2005. Earnings Statements, Pl.'s Ex. 106. Cham did not work 40 or more hours in any of the weeks between his return from medical leave and his leaving Station Operators. Cham testified at trial that his hours were even further reduced and that, for the week ending May 11, 2005, his scheduled hours were

cut back to only 24 hours of work. It was at this point in time, on May 20, 2005, that Cham left his employment with Station Operators.

In further support of his retaliation claim, Cham recalled an incident occurring one month into his period of leave in which the store manager, Andrew Pelletier ("Pelletier"), who was in charge of setting the work schedules, called Cham to ask if he was returning to work. Trial Tr. vol. I,. 69:7-13. Cham told Pelletier that he was not yet fully recovered. Cham testified that Pelletier first started yelling at him and then said "I'm going to kill you." Id. at 70:2.

Station Operators argues that there was no adverse employment action because Cham was never guaranteed a 40-hour work week. Cham's hours did fluctuate during his employment but this does not necessarily account for the declining number of hours he was scheduled to work upon his return from medical leave. Station Operators also contests the work schedule for which Cham's hours were reduced to 24. The debate at trial was over whether the schedule for that week was from August 2004 or, as Cham argued, May 2005. Trial Tr. vol. II, 84-99, January 25, 2011, Docket No. 96. Pelletier's testimony, however, made clear that several individuals listed on the contested schedule had not been hired until 2005. Id. at 158-162.

Ultimately, Station Operators argues that there was never any constructive discharge because Cham merely resigned his employment. A constructive discharge occurs where, objectively, the working conditions are found to "have been so difficult or unpleasant that a reasonable person in the employees' shoes would have felt compelled to resign." Meuser v. Fed. Express Corp., 564 F.3d 507, 522 (1st Cir. 2009) (quoting GTE Products Corp. v. Stewart, 421 Mass. 22, 34 (1995)). In this case, Cham's evidence showed that he generally worked 40 hours per week but that after his return from FMLA leave his work schedule was reduced to

7

approximately 32 hours per week. His evidence further demonstrated that in May 2005 his hours, for at least one week, were reduced to 24 hours per week. On these facts, a reasonable jury could find the reduction in work hours to be evidence of an employment action so intolerable so as to constitute a constructive discharge.

ii. Causal Connection

Station Operators argues that Cham has failed to show a causal connection between the alleged adverse employment actions and the taking of medical leave. "Normally, employers do not leave behind direct evidence of their discriminatory animus, such as express declarations of their retaliatory intentions." Sima v. First Citizens' Fed. Credit Union, 170 F.3d 37, 48 (1st Cir. 1999). In this case, Cham produced sufficient circumstantial evidence for a reasonable jury to find a causal connection between his taking of medical leave and the reduction in hours. Namely, the time frame during which Station Operators reduced Cham's work hours closely corresponded to his return from medical leave and such temporal proximity can bespeak retaliatory intent and give rise to an inference of a causal connection. See Hodgens, 144 F.3d at 170. The strength of that inference will depend upon factors such as a defendant's non-retaliatory explanation and the plaintiff's showing of pretext. See id. Based on the evidence in the record, there was a sufficient evidentiary basis for the jury to conclude that Station Operators took adverse employment action against Cham because he had exercised his right to medical leave.

Taking the evidence in the light most favorable to Cham and eschewing any credibility determinations, the Court finds that Station Operators' motion for judgment as a matter of law

must be denied.

## 2. Statute of Limitations

The viability of Cham's FMLA retaliation claim hinged upon whether or not Station Operators' violation was willful. Without a finding of willfulness, Cham's claim was time-barred. Typically, the FMLA imposes a two-year limitations period. 29 U.S.C. § 2617(c)(1). Here, Cham filed his complaint on May 6, 2008, and the last day on which Cham suffered any injury as a result of the alleged retaliation was May 20, 2005. Accordingly, Cham's FMLA retaliation claim is untimely unless the FMLA's three-year limitations period for willful violations applies. 29 U.S.C. § 2617(c)(2). A willful violation occurs when the "employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." Hillstrom v. Best Western TLC Hotel, 354 F.3d 27, 33 (1st Cir. 2003).

On Station Operators' motion, the "willfulness" question synthesizes itself into whether Cham presented sufficient evidence for a reasonable jury to conclude that Station Operators wilfully violated the FMLA. Cham's counsel did not specifically reference willfulness in either the opening or closing statements. Further, Cham's counsel never introduced direct evidence of Station Operator's in-house medical leave policy and never specifically questioned Pelletier as to his knowledge of the FMLA. Station Operators argues that the jury had no evidentiary basis for finding a willful violation.

The question put to the jury was whether Station Operators engaged in conduct "such that it knew its conduct violated the law or showed reckless disregard for whether its conduct violated the law." Jury Verdict Form, Docket No. 85. As for the evidence presented to the jury, it is not

enough to simply show that the "employer knew the Act was in the picture" or that the "employer acted unreasonably in believing it was complying with the statue." Hillstrom, 354 F.3d at 33. An employer must be more than negligent. See id. at 34.

Station Operators argues that Cham failed to prove that Pelletier was aware of the FMLA and that "medical leave" is not synonymous with "FMLA leave." The record, however, demonstrates that Pelletier was a supervisor who was aware of Station Operators' medical leave policy and that he helped administer that policy. Pelletier was a point of contact while Cham was out on leave and Pelletier spoke to him directly about his anticipated return date. In addition, at all times, the FMLA governed and informed the Station Operators medical leave policy that Pelletier administered. Cham has demonstrated a close enough connection between Pelletier and the alleged adverse employment action to conclude that he has done more than merely show that the FMLA was in the picture. In the end, Cham's evidence in support of his FMLA retaliation claim was so closely entwined with his showing of willfulness that the Court cannot now conclude that the evidence of willfulness was insufficient for a reasonable factfinder to have found that Station Operators acted knowingly or with reckless disregard for whether its actions violated the FMLA.

### B. Station Operators' Motion for a New Trial

Station Operators' motion for a new trial presents a separate issue that is somewhat related to its argument on the jury's determination of willfulness. At trial, evidence in support of Cham's disparate treatment and hostile work environment claims was put before the jury; that evidence, which was irrelevant to the FMLA claim, had a potentially prejudicial bearing on the

single claim decided by the jury. The Court dismissed Cham's disparate treatment claim on Station Operators' Rule 50 motion, and Cham voluntarily withdrew his hostile work environment claim before the conclusion of trial but after presenting evidence in support of the claim. The question now is whether the jury was presented with extraneous evidence that was unduly prejudicial to Station Operators.

Cham's allegations of discriminatory treatment primarily involved Pelletier, an assistant manager who was later promoted to store manager, and Stacy Vanner ("Vanner"), a sales associate who was later promoted to assistant manager. As background evidence of discriminatory animus, Cham testified that in October 2004 Pelletier passed him over for promotion and instead promoted Vanner, a white woman, to the position of assistant manager even though Cham had more experience. Trial Tr. vol. I, 37:5-38:11. As further evidence of discriminatory intent and workplace hostility, Cham testified that Pelletier made derogatory comments about Muslims and terrorists, id. at 39:22- 40:6, and berated him on another occasion when he was late to work because of a flat tire, id. at 42:2-43:25. Additionally, Cham testified that on several occasions Pelletier used the phrase "you people" in reference to Cham and an African-American female employee. Id. at 40:12-16.

In further support of his discrimination claims, Cham testified that his holiday work hours were reduced beginning on Labor Day in 2004. Id. at 44:1-60:15. He testified that under prior store managers he had received eight hours of holiday pay on various holidays. He alleged, however, that beginning in November 2004, just after Pelletier became store manager, he no longer received such holiday pay. See Earnings Statements, Pl.'s Ex. 106. Also, Cham testified that on December 21, 2004, he was disciplined for missing work due to an emergency while

11

traveling out of town. Trial Tr. vol. I, 60:16-65:15. Cham testified that Pelletier had wrongly disciplined him by putting him on probation because, although a "no call/no show is a posted offense," it is not a violation of company policy if the event was "beyond the control of the employee." Id. at 62:15-23; see also ExxonMobil Posted Offenses, Pl.'s Ex. 3; Cham Probation Letter, Pl.'s Ex. 94.

Cham called several witnesses in support of his discrimination claims. Vanner testified that "[e]very once in a while" a friend of hers would come to work and tell "childish jokes" of a "racial" nature in front of the other employees, including Cham. Trial Tr. vol. II, 47:9-18. Vanner also testified as to the harassment training she received while working for Station Operators and she testified as to her general understanding of Station Operators' progressive discipline policy. Finally, Vanner testified about an allegedly discriminatory incident occurring in 2005 in which she and Cham were "screaming at each other" over how to handle a situation involving a customer who left without paying for gas after filling the tank. Id. at 78:12-81:25.

Cham also called Pelletier to testify. Pelletier testified that he was responsible for hiring a replacement to fill the assistant manager position. Id. at 106:25-109:12. He further testified that Vanner, a white woman, was hired for the assistant manager position even though six weeks prior to her promotion she had been disciplined for having a short register. Id. at 112:17-113:3. Pelletier also provided testimony regarding Station Operators' posted offense list and the company's discipline policy. Id. at 114:11-131:19. Additionally, Pelletier testified as to why he put Cham on probation and what he meant with regard to certain written comments he made about Cham's work performance after Cham had left the company. Id. 132:19-134:18.

Station Operators argues that Cham's evidence in support of his hostile work

environment and disparate treatment claims prejudiced the jury, warranting a new trial. Much of that evidence involved discrete discriminatory acts that were independently inactionable because they were untimely. See 42 U.S.C. § 2000e-5(e); R.I. Gen. Laws § 28-5-17. As to disparate treatment, both the probation and promotion incidents were time-barred since they occurred in 2004 and the discrimination charge was not filed until February 8, 2006. The evidence came in, however, as background evidence of discriminatory animus. Similarly, the allegations about holiday pay occurred outside the applicable limitations period. None of this evidence had any relevancy beyond Cham's employment discrimination claims and that evidence was rendered wholly irrelevant when this Court granted Station Operators' Rule 50 motion.

In addition to the evidence that came in on Cham's disparate treatment claim, a great deal of irrelevant evidence also came in on Cham's hostile work environment claim. A hostile work environment is one that is "sufficiently severe or pervasive so as to alter the conditions of the plaintiff's employment and create an abusive work environment." Rosario v. Dept. of Army, 607 F.3d 241, 246 (1st Cir. 2010) (quoting Lockridge v. Univ. of Me. Sys., 597 F.3d 464, 473 (1st Cir. 2010)). Such a determination looks to "all the attendant circumstances" and thus potentially pulls into the fray a plethora of workplace conduct. Rosario, 607 F.3d at 247. Cham's allegations in support of his hostile work environment claim were vague and lacked an established connection to race, color, or national origin. The jury was left considering evidence relating to: Pelletier's offhand comment about terrorists, Vanner's friend's off-color jokes, and incidences of flared tempers in which Pelletier "berated" Cham for being late and Vanner "screamed" at Cham over how to resolve an incident with a customer. None of this evidence had any bearing on the FMLA retaliation claim that ultimately went to the jury, and Cham's counsel,

13

recognizing the claim's lack of merit, voluntarily withdrew the hostile work environment claim but only after putting the extraneous evidence before the jury.

On Station Operators' motion for a new trial, the Court must consider whether a miscarriage of justice would result if the jury verdict were allowed to stand. In this case, only the FMLA retaliation claim went to the jury. The jury, however, was left to try sort through a slew of wholly irrelevant evidence in order to make a finding of willful conduct and to render a verdict for money damages. Under these circumstances, that irrelevant evidence had great potential to confuse the jury and to unfairly prejudice Station Operators. The viability of Cham's retaliation claim depended entirely upon whether or not Station Operators' actions were willful. On these facts, a miscarriage of justice would result if the jury verdict were to stand. Simply, in the aggregate, too much extraneous and prejudicial evidence was put before the jury for the Court to conclude that the verdict, especially with regard to the willfulness determination, was not erroneous.

Station Operators' motion for a new trial is granted.

### IV. Conclusion

For the reasons set forth above, Station Operators' motion for judgment as a matter of law is DENIED and Station Operators' motion for a new trial is GRANTED.

SO ORDERED

/s/ Mary M. Lisi
Mary M. Lisi
United States District Judge
June 2, 2011